IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

GERALD DAVID MULLINS, JR.,

        Plaintiff,

v.                            CIVIL ACTION NO.  2:12-cv-05825

PRIME CARE MEDICAL, INC.

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant PrimeCare Medical, Inc.'s ("PrimeCare") motion to dismiss and alternative motion for summary judgment ("PrimeCare's motion").  United States Magistrate Judge Dwane L. Tinsley has submitted proposed findings and a recommendation ("PF&R") that the motion be granted.  For the reasons that follow, that PF&R is **ADOPTED** to the extent that it is consistent with this opinion and PrimeCare's motion [ECF 12] is **GRANTED**.

*I.*       *BACKGROUND*

This case arises out of the treatment of certain injuries Plaintiff, Gerald D. Mullins, Jr. ("Plaintiff"), alleges that he suffered while incarcerated at the Southwestern Regional Jail ("the SWRJ").  (ECF 2 at 2.)  PrimeCare is a Pennsylvania corporation that privately owns PrimeCare Medical of West Virginia, Inc., which corporation was at all times relevant to Plaintiff's Complaint contracted with the West Virginia Regional Jail and Correctional Facility Authority ("WVRJCFA") to provide health care services to inmates in West Virginia's regional jails, including the SWRJ.  (ECF 13 at 4.)

Plaintiff filed his pro se verified Complaint (ECF 2; 2-2 at 1) on September 24, 2012, principally raising issues related to the post-surgical treatment of his left hand and the conditions of confinement in the medical unit at SWRJ.  (ECF 2.)

Specifically, Plaintiff's Complaint alleges that he had surgery on his left hand on January 23, 2012, for a shattered fifth metacarpal bone, which required three steel pins to fix.  (ECF 2 at 4).  Plaintiff complains that following this surgery the staff would never change his dressing, stating that he had to wait to see the operating physician.  (*Id.*)  Plaintiff alleges that the pins in his hand worked their way through the skin and were protruding from his hand, and claims that he begged staff to clean the wound and disinfect it, but they refused to do so.  (*Id.*)  Plaintiff further alleges that, two days before he was to have the pins removed, he contracted a staph infection.  (*Id.*)

Plaintiff further alleges that he was housed in the medical unit of the SWRJ for over a month.  (*Id.*)  He claims that he was required to be in a 6' x 10' cell with another inmate for 23.5 hours per day, and was made to sleep on the floor, which was only cleaned once a week and was "nasty."  (*Id.*)  Plaintiff further contends that, because of degenerative disc disease and chronic back problems, he should not have been sleeping on the floor.  (*Id.*)  Plaintiff also alleges that his "right hand was also damaged and needed surgery."  (*Id.*)

By Standing Order entered September 2, 2010, and filed in this case on September 25, 2012, this action was referred to former United States Magistrate Judge Mary E. Stanley for submission of a PF&R.  Referral of this action was later transferred to United States Magistrate Judge Dwane L. Tinsley.  Magistrate Judge Tinsley filed his PF&R (ECF 10) on May 24, 2013, recommending that this Court dismiss as moot Plaintiff's claims for declaratory and injunctive relief in light of the fact that Plaintiff has been transferred to a different correctional facility.

2

Magistrate Judge Tinsley further recommended that the Court dismiss Plaintiff's claims for monetary relief against SWRJ, but permit the case to remain referred to the Magistrate for the purpose of conducting additional proceedings concerning Plaintiff's claims for monetary relief against PrimeCare.  Plaintiff did not file objections, and the Court adopted the PF&R and ordered that the case remain referred to Magistrate Judge Tinsley for the purpose of conducting all remaining proceedings.  (ECF 15.)

On June 20, 2013, Magistrate Judge Tinsley issued a Notice and Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) ("*Roseboro* notice"), which notice informed Plaintiff that PrimeCare had filed its motion to dismiss and alternative motion for summary judgment, with accompanying affidavits and exhibits and a memorandum of law in support. (ECF 14.)  As pertinent here, this notice informed Plaintiff that he had the right and obligation to file a response to PrimeCare's motion and to submit affidavits or statements subject to the penalties of perjury, exhibits, or other legal or factual material supporting his position in the case. (ECF 14 at 1−2.)

On January 27, 2014, Magistrate Judge Tinsley submitted his PF&R with respect to Plaintiff's remaining claims for monetary relief against PrimeCare.  (ECF 16.)  The PF&R explains that Plaintiff failed to file any response to PrimeCare's motion, and, consistent with the *Roseboro* notice, accepts as true those factual statements submitted by PrimeCare (ECF 16 at 3, 18).  PrimeCare submitted three affidavits in support of its motion, attesting to the scope of treatment that Plaintiff received, as well as his failure to comply with the requirements of the Medical Professional Liability Act, W. Va. Code 55-7B-1, *et seq.*, ("MPLA") and failure to exhaust the administrative remedies available to him through the WVRJCFA.  These facts are set forth in detail in the PF&R, and need not be repeated here.  Based on those facts, the PF&R

recommends that the Court grant PrimeCare's motion for summary judgment.  (ECF 16 at 26.)  Plaintiff was notified of his opportunity to file objections to the PF&R.  (*Id.*)

Shortly thereafter, the Court received a letter-form objection to the PF&R from Plaintiff.  (ECF 17.)   In his objection, Plaintiff asserted that he did not file a response to PrimeCare's motion because he never received the motion.  (ECF 17 at 1.)  Plaintiff asserted that he has been moved many times over the past two and a half years, and that the only correspondence that he received prior to a January 30, 2014, letter from the Clerk's Office was a correspondence which, based on Plaintiff's description, appears to have concerned the dismissal of his claims for declaratory and injunctive relief and his claims against SWRJ.  (ECF 10; ECF 15.)  Plaintiff also suggested that he did not receive the June 20, 2013, *Roseboro* notice issued by Magistrate Judge Tinsley.  (ECF 18 at 1−2.)

The Court found that good cause and excusable neglect existed for Plaintiff's failure to respond to PrimeCare's motion, and directed Plaintiff to file a response to that motion *along with* his objections to the PF&R by February 28, 2014.  (ECF 19.)  The Court further ordered that PrimeCare re-serve a copy of its motion and supporting materials on Plaintiff.  (*Id.*)  Copies of Magistrate Judge Tinsley's *Roseboro* notice and the PF&R were also sent to Plaintiff.  (*Id.*)

Thereafter, on Plaintiff's motion, the Court further extended the period under which Plaintiff would be permitted to respond to PrimeCare's motion and object to the PF&R until March 20, 2014.  (ECF 20; ECF 21.)

Plaintiff timely submitted a letter reciting additional allegations similar in character to those in his Complaint.  (ECF 22.)  PrimeCare filed a reply, along with another affidavit, challenging certain of the assertions in Plaintiff's letter.  (ECF 23.)

## II.     LEGAL STANDARDS

### 1.  PF&R Standard and Characterization of Plaintiff's Letter

In reviewing Plaintiff's pleadings and other filings, this Court will consider the fact that Plaintiff is acting pro se, and his pleadings and other filings will be accorded liberal construction. *Estelle v. Gamble,* 429 U.S. 97, 106, (1976); *Loe v. Armistead,* 582 F.2d 1291, 1295 (4th Cir. 1978).

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed.  *Thomas v. Arn*, 474 U.S. 140, 150 (1985).  In addition, this Court need not conduct a de novo review when a petitioner "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations."  *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

Here, the PF&R relies on the fact that Plaintiff did not respond to PrimeCare's motion as a basis for deeming undisputed the facts as set forth by PrimeCare.  (ECF 16 at 6.)  Based on those undisputed facts, the PF&R recommends that the Court find that Plaintiff (1) failed to establish that PrimeCare or any of its individual employees were deliberately indifferent to any of the plaintiff's serious medical needs; (2) failed to comply with the statutory requirements for pursuing a claim of negligence; and (3) failed to exhaust his administrative remedies concerning all of the claims raised in his complaint.  For each of these reasons, the PF&R recommends that the Court dismiss Plaintiff's Complaint.

As noted above, the Court found good cause and excusable neglect existed for Plaintiff's failure to file a response to PrimeCare's motion and permitted Plaintiff to submit such a response along with his objections to the PF&R by March 20, 2014.  Plaintiff submitted a nine-page, unverified, handwritten letter in which he largely repeats the assertions made in his Complaint with additional detail.  Accordingly, the Court construes Plaintiff's letter as both his response to PrimeCare's motion and his objections to the PF&R.

To the extent that Plaintiff's letter can be construed as a response to PrimeCare's motion, Plaintiff appears to argue that disputes of fact exist regarding the treatment that Plaintiff received on his left and right hands.  Presumably, Plaintiff argues that these disputed facts are material and render summary judgment inappropriate, although his letter contains no legal argument or citation to authority.[1]  To the extent that Plaintiff's letter can be construed as an objection to the PF&R, Plaintiff appears to argue that the PF&R's conclusion with respect to his deliberate indifference claim should be different in light of these factual disputes.

Importantly, Plaintiff's letter challenges *only* the facts as laid out by PrimeCare with respect to the actual treatment that he received on his injured hands, and also reiterates his allegations about having to sleep on the floor in dirty conditions.  Because such response necessarily challenges the PF&R's conclusion with respect to the merits of Plaintiff's deliberate indifference claim, which conclusion was based on PrimeCare's undisputed facts, the Court will conduct a de novo review of those portions of the PF&R.

---

[1] PrimeCare moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and alternatively for summary judgment.  These alternative grounds were clearly stated in the title of the motion and accompanying memorandum of law, as well as argued in those filings.  (ECF 12; ECF 13.)  Because the magistrate judge relied upon information outside the four corners of the Complaint in reviewing Plaintiff's deliberate indifference claim, he treated PrimeCare's motion as one for summary judgment.  After the Court found good cause and excusable neglect to extend the time for Plaintiff to respond to PrimeCare's motion and to file objections to the PF&R, Plaintiff was again served with a copy of PrimeCare's motion, memorandum of law, and supporting affidavits, as well as another copy of the *Roseboro* notice (which advised Plaintiff concerning PrimeCare's motion for summary judgment) and the PF&R (which construed PrimeCare's motion as one for summary judgment).  Plaintiff was, therefore, advised at the time that he submitted his letter-form response and objections that PrimeCare had moved for summary judgment.

Notably, however, Plaintiff makes no challenge to the facts as laid out by PrimeCare concerning his failure to exhaust his administrative remedies concerning his allegations about the medical treatment he received and the conditions of confinement or his failure to comply with statutory requirements for pursuing a claim of negligence or medical malpractice.  Nor does Plaintiff object to the PF&R's conclusion with respect to those issues.  Accordingly, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge with respect to those portions of the PF&R.

2. *Summary Judgment Standard*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.  56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  *See* Fed. R. Civ. P.  56(e).  A court must neither resolve disputed facts nor weigh the evidence.  *Russell v. Microdyne Corp*., 65 F.3d 1229, 1239 (4th Cir. 1995).  Nor may a court make determinations of credibility.  *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The moving party bears the initial burden of showing that there is no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322–23. "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." *Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 718–19 (4th Cir. 1991). The non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995). Moreover, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56, advisory committee notes, 1963 Amendment, Subdivision (e). In order to properly assess "proof" the party resisting a summary judgment motion must support his factual assertions by: 1) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or 2) showing that the materials cited establish the presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support proffered facts. *See* Fed. R. Civ. P. 56(c)(1)(A–B). Where a party fails to properly support an assertion of fact or fails to properly address another

8

party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may, *inter alia*, consider any unsupported or unaddressed facts undisputed and grant summary judgment if the summary judgment motion, its supporting materials, and the undisputed facts show the movant is entitled to relief. *See* Fed. R. Civ. P. 56(e).

### III.    DISCUSSION

Although Plaintiff's letter does not compel a conclusion contrary to the PF&R's recommendations, it does, however, raise a number of issues to which the Court now turns.

#### A. Exhaustion

##### 1. Plaintiff Has Not Objected to the PF&R's Recommendation that His Complaint be Dismissed for Failure to Exhaust His Administrative Remedies

The PF&R recommends that Plaintiff's Complaint be dismissed for failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). As noted above, Plaintiff has not objected to this recommendation, and the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas*, 474 U.S. at 150. Because the PF&R's recommendation of dismissal on this ground concerned Plaintiff's Complaint in its entirety, such ground provides a basis for finding that PrimeCare is entitled to summary judgment and that Plaintiff's Complaint must be dismissed.

##### 2. Plaintiff's Letter Does Not Address His Failure to Exhaust His Administrative Remedies

Even were the Court to conduct a de novo review of this recommendation, however, Plaintiff's letter contains no argument or relevant assertions regarding PrimeCare's argument that he failed to exhaust the available administrative remedies.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his

administrative remedies before filing a section 1983 action, providing, in pertinent part, that: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81 (2006).  An inmate's failure to exhaust his administrative remedies is an affirmative defense that must be raised and proved by a defendant.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Here, PrimeCare argues that Plaintiff has failed to exhaust required administrative remedies provided by WVRJCFA and that, therefore, Plaintiff's claim should be dismissed. Specifically, in support of these assertions, PrimeCare presents an affidavit from Steven M. Crook, the Chief of Operations for the WVRJCFA, attesting to the procedures established for inmate grievances, and Plaintiff's failure to comply with those procedures regarding his allegations that he had to sleep on the floor of his cell in the medical unit at the SWRJ and that the dressing on his post-surgical wound on his left hand was not changed as frequently as he thought it should be.  (ECF 12-3.)

The Court observes that Plaintiff filed a verified Complaint, which pleading is the equivalent of an opposing affidavit for summary judgment purposes when the allegations contained therein are based on personal knowledge.  *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).  (ECF 2-2.)  In his Complaint, Plaintiff states that he has "filed many grievances to the Administrator and wrote Chareleston [sic] several times" but "nothing was done."  (ECF 2 at 3.)  Plaintiff's averments, however, are vague and conclusory and lack the specificity to conclude that he actually *exhausted* these remedies, let alone that he did so with respect to the specific

allegations that form the basis of his Complaint.  Moreover, as noted above, Plaintiff's letter is silent with respect to the factual averments and arguments presented by PrimeCare on this issue.

As such, Plaintiff fails to present sufficient facts indicating that there is a genuine dispute of material fact as to whether he has, in fact, exhausted his administrative remedies with respect to the claims brought against PrimeCare.  In consideration of the undisputed facts set forth by PrimeCare, the Court agrees with the PF&R that such facts are sufficient to demonstrate that Plaintiff did not exhaust the administrative remedies related to the allegations in his Complaint, and such conclusion provides another basis for finding that PrimeCare is entitled to summary judgment.  *See Johnson v. Hunter*, CIV.A. 0:07-0144HFFB, 2007 WL 2815596, at *5 (D.S.C. Sept. 25, 2007) (granting summary judgment where plaintiff failed to submit any evidence to show that he exhausted his administrative remedies with respect to his claims, or even address the issue in his response to the Defendants' motion for summary judgment and exhibits); *see also Yost v. PrimeCare Medical of W. Va.*, 3:04-cv-1296, 2009 WL 3063001, at *1−2 (S.D. W. Va. Sept. 22, 2009) (dismissing plaintiff's complaint where plaintiff failed to assert that he fully complied with all of the steps of the administrative grievance processes, including specifically the appeal of a denial of a grievance).

### B.  *Section 1983 Claims*

In his letter, Plaintiff challenges *only* the facts as laid out by PrimeCare with respect to the treatment that he received on his injured hands, and reiterates the allegations made in his Complaint about having to sleep on the floor and the cleanliness of the medical unit cells.  (ECF 22.)  Because the PF&R relied on PrimeCare's undisputed version of facts recommending dismissal of Plaintiff's Eighth Amendment claim, Plaintiff's response necessarily objects to that recommendation of the PF&R.  As such, the Court conducts a de novo review of those portions

of the PF&R.  For the reasons that follow, the Court is not persuaded by Plaintiff's letter that summary judgment is not warranted.

    *1.   Plaintiff's Letter Does Not Present Summary Judgment Evidence*

    First, to the extent that Plaintiff seeks to challenge certain facts presented by PrimeCare concerning the medical treatment he received, Plaintiff's letter does not actually present summary judgment evidence in support of such a challenge.

    Plaintiff's letter is neither sworn nor notarized, but is, rather, a self-described "letter of dispute" which purports to present "my account of the facts of treatment or lack thereof as I know them to be."  (ECF 22 at 1.)  Such a response is contrary to both the standards of summary judgment *and* the guidance provided to Plaintiff in Magistrate Judge Tinsley's *Roseboro* notice, which notice was re-sent to Plaintiff when the Court granted him an extension of time to respond to PrimeCare's motion and to submit objections to the PF&R.  For example, this notice instructed plaintiff of his "right and obligation to file a response to defendant's motion, submitting affidavits or statements subject to the penalties of perjury, exhibits, or other legal or factual material supporting his position in the case."  (ECF 14 at 1.)  It further instructed Plaintiff that he "must set out either in his own affidavit or sworn statement, or the affidavits or sworn statements of other witnesses, specific facts that show that the plaintiff and the defendant actually disagree about one or more important facts present in this case."  (ECF 14 at 1−2.)  *See also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials).

    Accordingly, Plaintiff's letter does not demonstrate the existence of genuine disputes of

material fact.  Consistent with both Fed. R. Civ. P. 56(e) and the instructions provided to Plaintiff in Magistrate Judge's *Roseboro* notice, the Court may, therefore, accept as undisputed for purposes of this motion the factual statements in the affidavits submitted by PrimeCare, which statements were relied upon in the PF&R.  Upon review of this summary judgment record, the Court concludes that the findings and recommendations set forth in the PF&R are appropriate, and dismissal of Plaintiff's Complaint is warranted for the reasons articulated therein.  As such, this ground provides another basis for finding that PrimeCare is entitled to summary judgment.

> 2. *Plaintiff's Response Does Not Demonstrate a Triable Issue of Fact with Respect to His Eighth Amendment Claim Based on Medical Treatment*

In light of Plaintiff's pro se status, however, the Court will also evaluate Plaintiff's letter as presenting summary judgment evidence in opposition to PrimeCare's motion.  But even accepting as true all of the assertions therein that are based on personal knowledge and would be admissible in evidence,[2] Plaintiff's letter does not demonstrate that there exists a genuine issue of material fact as to whether PrimeCare was deliberately indifferent to Plaintiff's serious medical need in violation of the Eighth Amendment, nor does it indicate that PrimeCare is not entitled to judgment as a matter of law on Plaintiff's claim.

> a. *Relevant Law*

Neither Plaintiff's Complaint nor his letter state the statutory provision under which he asserts a claim or what Constitutional rights, if any, may form the basis of his claim.  In consideration of his factual allegations and claim for monetary damages, however, the Court

---

[2] Plaintiff's letter includes many assertions regarding statements made by other individuals that are not clearly admissible evidence, as well as many speculative and conclusory assertions regarding certain medical diagnoses. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.") .

agrees with the magistrate judge that Plaintiff arguably at least asserts a claim under section 1983 for a violation of the Eighth Amendment.[3]

"In order to state a cognizable claim for denial of medical care under the Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104−05 (1976). "Serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Gaudreault v. Munic. of Salem, Mass*., 923 F.2d 203, 208 (1st Cir. 1990). Deliberate indifference may be demonstrated by either actual intent or reckless disregard. *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985). A defendant acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Mere negligence or malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106. Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate

---

[3] As discussed in more detail in the PF&R, because it appears that Plaintiff was a sentenced state prisoner during the time period in question, the Eighth Amendment's guarantee against cruel and unusual punishment, rather than the due process clause of the Fourteenth Amendment, applies to this case. (ECF 16 at 15 n.2.) *See also Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating rights elsewhere conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed.") (internal quotations and citation omitted).

indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47−48 (4th Cir. 1977).

Because PrimeCare is a contracted medical provider for the WVRJCFA, a state agency, the deliberate indifference standard is applicable to the conduct of PrimeCare and its employees. *West v. Atkins*, 487 U.S. 42 (1998) (explaining that a private entity which contracts with the state to provide medical services acts "under color of state law"). In order to succeed on a § 1983 claim, however, Plaintiff must show that "the official[s] charged acted personally in the deprivation of the plaintiffs' rights. The doctrine of respondeat superior has no application under [§ 1983]." *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle,* 323 F.Supp. 203, 214 (D. Md. 1971)). "[A] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999) (emphasis in original).

       *b.  Official Policy or Custom*

Initially, the Court observes Plaintiff's Complaint does not appear to allege that his constitutional rights were violated due to a policy or custom of PrimeCare's. (ECF 2 at 4-5.) Rather, it is concerned with the particular treatment that he received for his injury from "the staff" in the medical unit of SWRJ. (*Id.*) Very liberally construed, however, it is arguable that Plaintiff's assertion that "the staff" would not change the post-surgical dressing on his wound, telling him that he instead had to wait to see the operating physician, could be understood as an

assertion of an official policy.  (ECF 2 at 4.)

In his letter, Plaintiff again principally complains of certain individual treatment by employees of PrimeCare and other jail officials, none of whom are named as defendants in his Complaint.  He occasionally, however, makes reference to a "protocol" that he asserts existed and led to his injuries.  Such assertions again appear to principally concern the failure by nurses at SWRJ to change the post-surgical dressings on his left hand.  The closest thing to allegations regarding a policy or custom of PrimeCare's that the Court can discern from Plaintiff's letter are that:  one nurse would change his bandage when it was dirty only at night when no one else was present so that she wouldn't get in trouble for following PrimeCare's orders (ECF 22 at 5); Plaintiff "feels" he got an infection in his left hand from, among other things, "neglect due to nurses haveing [sic] to Follow PrimeCares [sic] Protocol"(ECF 22 at 8); and, Plaintiff did not receive proper treatment and was submitted to unsafe and unhealthy conditions due to neglect on the part of PrimeCares [sic] employees and its protocol of treatment of inmates."  (ECF 22 at 9). To the extent that such statements can be understood as support for Plaintiff's allegation of  an official policy or custom, Plaintiff's claim still fails for at least three independent reasons.

First, Plaintiff presents no evidence of such a policy or custom beyond his own conclusory and speculative assertions.  *See e.g.*, *Greensboro Prof'l Firefighters Ass'n*, 64 F.3d at 967 (explaining that conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment); *Ennis*, 53 F.3d at 62 ("[m]ere unsupported speculation . . .  is not enough to defeat a summary judgment motion").  Indeed, PrimeCare has introduced evidence that the post-surgical changing of Plaintiff's dressing was handled by the doctor who performed the surgery, and that the doctor's discharge orders included a direction that the dressing not be removed.  (ECF 12-2 at 5.)

16

Second, as noted above, to the extent that such a policy existed, Plaintiff presents no specific evidence (beyond this vague and conclusory statements in his Complaint) to counter PrimeCare's evidence that he failed to exhaust the grievance procedures available to him. *See Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *Anderson*, 477 U.S. at 256 (explaining that the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor").

Third, even if such a policy existed and Plaintiff had properly challenged it through the grievance procedures available to him, the policy articulated by Plaintiff of not changing post-surgical bandages as frequently as Plaintiff believes they should be changed, does not demonstrate that PrimeCare was deliberately indifferent to Plaintiff's serious medical needs. This is so because there are no allegations, let alone evidence, that such a policy was put in place with the actual intent to cause harm or reckless disregard of the risk of harm, nor does it indicate a treatment protocol that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Cf. Little v. Tygarts Valley Reg'l Jail*, 5:12CV148, 2013 WL 5744780, at *2 (N.D. W. Va. Oct. 23, 2013) (noting that defendant corporation was not a "person" for purposes of 42 U.S.C. § 1983, and that where there are no allegations against it involving policies or customs of deliberate indifference such entity should be dismissed); *Rowe v. PrimeCare Med. of W. Virginia, Inc.*, CIV.A. 3:04-1246, 2009 WL 3063429, at *2 (S.D. W. Va. Sept. 21, 2009) (Chambers, J.) (finding no liability under section 1983 for defendant corporation where there was no basis for concluding that defendant corporation's involvement extended beyond the fact that it employed health care workers who treated plaintiff).

The Court is also not persuaded that Plaintiff has a viable section 1983 action based on his assertions with respect to the treatment of injuries Plaintiff alleges that he suffered on his right hand. None of Plaintiff's allegations concerning the treatment of his right hand, many newly made in his letter, relate to an alleged policy or custom of PrimeCare, as opposed to the individual treatment that he received by certain doctors and nurses. *See Vinnedge v. Gibbs,* 550 F.2d at 928 ("The doctrine of respondeat superior has no application under [§ 1983]."); *Austin*, 195 F.3d at 728 ("[A] private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights.").

The same is true with respect to Plaintiff's assertions that he should not have slept on the floor because he had chronic degenerative disc disease and chronic back problems. (ECF 2 at 5.) Not only is this assertion unmoored from any allegation of a policy or custom, but, assuming that this condition constituted a serious medical need, Plaintiff has also not alleged that PrimeCare was aware of such condition and either intentionally or recklessly disregarded the risk of harm to Plaintiff from sleeping on the floor.

Ultimately, nothing Plaintiff has alleged in his Complaint or reiterated in the assertions of his letter indicate that a policy or custom of PrimeCare's existed, let alone that a policy or custom existed that had a direct causal relation to providing medical care to Plaintiff that was constitutionally inadequate.

Accordingly, and for each of these independent reasons, the Court cannot conclude as a matter of law that even accepting Plaintiff's representation of events in his letter he could succeed on his section 1983 claim against PrimeCare. *See Celotex*, 477 U.S. at 322 (explaining that Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case"). Such

conclusion presents another basis for finding that PrimeCare is entitled to summary judgment.

### 3. There is No Triable Issue of Fact with Respect to Plaintiff's Eighth Amendment Claim Based on Prison Conditions

Plaintiff's Complaint also alleges that he had to sleep on the floor of the medical unit and describes a lack of cleanliness in the cells. Plaintiff's letter re-states and expands on such allegations.[4] To the extent that these assertions can be construed as separate grounds for stating an Eighth Amendment claim, however, such a claim also cannot survive summary judgment on this record. *See Strickler v. Waters,* 989 F.2d 1375, 1379 (4th Cir. 1993) (explaining that to state a claim for cruel and unusual punishment in violation of the Eighth Amendment, an inmate must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials) (internal quotations and citation omitted).

First, as noted above, Plaintiff has not produced any argument or evidence to counter PrimeCare's evidence that he failed to exhaust the administrative remedies available to him regarding his allegations of having to sleep on a mattress on the floor. *See Ngo*, 548 U.S. at 90.

Even were the Court to ignore Plaintiff's failure to exhaust his administrative remedies with respect to his allegations of having to sleep on the floor *and* to credit all of the additional assertions in Plaintiff's letter regarding these conditions as factual evidence for purposes of summary judgment, PrimeCare would still be entitled to summary judgment on Plaintiff's Eighth Amendment claim as it relates to these claims. This is so because Plaintiff has offered no argument or evidence to counter PrimeCare's evidence that the WVRJCFA correctional staff controls prisoner assignments and the cleaning of cells (ECF 12-2 at 12), and that, therefore,

---

[4] For instance, Plaintiff states that he had to sleep on the floor of the cells in the medical units (ECF 22 at 6, 9), and that he was moved several times from cell to cell in the medical unit (ECF 22 at 4). He complains that these cells were not cleaned thoroughly while he was there. (ECF 22 at 4−5, 8). He also makes numerous complaints about the amount of recreation time, and other conditions of confinement in the medical unit. (ECF 22 at 8.)

PrimeCare is not the proper party against whom to bring such claims.  Additionally, Plaintiff has neither alleged nor produced evidence that such conditions were the result of an official policy of PrimeCare, let alone that such a policy was put in place with deliberate indifference to a serious medical need.

### C. Negligence Claims

Ultimately, Plaintiff's allegations appear to concern what may be characterized as at most negligence or medical malpractice.  To the extent that Plaintiff can be understood to be making a claim that PrimeCare's conduct constitutes negligence or medical malpractice (ECF 2-1 at 2; ECF 22 at 8−9), however, PrimeCare is also entitled to summary judgment on such claims for at least three reasons.

First, Plaintiff has not objected to the PF&R's recommendation that to the extent that he raises negligence and medical malpractice claims they should be dismissed for failure to comply with the MPLA.  As such, the Court is not required to review such recommendation under a de novo or any other standard.  *See Thomas*, 474 U.S. at 150.

Second, such claims are not properly brought pursuant to section 1983.  *Estelle v. Gamble,* 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Templeton v. Bennett*, CIV.A. 3:13-6577, 2014 WL 294299, at *12 (S.D. W. Va. Jan. 24, 2014) ("[M]edical negligence is not the equivalent of a constitutional violation.").

Third, even were the Court to review such portion of the PF&R de novo and to construe Plaintiff's Complaint as bringing a negligence or medical malpractice claim, Plaintiff has also not produced any argument, let alone evidence, to challenge PrimeCare's assertion and evidence that the MPLA applies to his claims and that he failed to comply with the required statutory pre-

requisites.

In West Virginia, "[c]laims of professional negligence arising from health care practices are generally governed by the Medical Professional Liability Act ("MPLA"), W. Va. Code § 55–713–1, et seq." *Treadway v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 5:12-CV-00049, 2013 WL 690431, at *4−5 (S.D. W. Va. Feb. 25, 2013) (citing *Banfi v. American Hosp. for Rehabilitation,* 529 S.E.2d 600, 605 (W. Va. 2000)).

As pertinent here, certain pre-filing prerequisites must be met before a health care provider may be sued, including:

> At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. . . .

W. Va.Code, § 55–7B–6(b). The primary purpose of requiring a pre-suit notice of claim and screening certificate of merit: is (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims. W. Va. Code § 55–7B–6; *Hinchman v. Gillette,* 618 S.E.2d 387, 394 (W.Va. 2005).

Here, in support of its argument, PrimeCare has presented an affidavit from Sandra M. Ulerick, Director of Risk Management for PrimeCare.  Ms. Ulerick states that although Plaintiff attempted to send PrimeCare a letter-form "Notice of Claim" before he filed the instant lawsuit, this "Notice of Claim" was not sent by certified mail, did not identify the specific type of claim that Plaintiff sought to pursue, and did not include a screening certificate of merit by a qualified health provider.  (ECF 12-1.)  At the time that Plaintiff filed his Complaint, Ms. Ulerick attests, he still had not properly complied with the requirements of the MPLA.  Plaintiff has not responded with any argument or evidence that he complied with these requirements,[5] nor does he argue that for any reason he was not required to so comply.  *Cf.* W. Va. Code § 55-7B-6(c) ("Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.").

The Court is persuaded, as PrimeCare asserts, that Plaintiff's allegations concerning the quality and timeliness of his treatment could implicate a medical malpractice claim under the MPLA, and that, therefore, Plaintiff should have followed the applicable pre-filing requirements. Plaintiff has not, however, produced any argument or evidence that he either did satisfy such requirements, or that such requirements were not applicable to his claim.  *See Treadway*, 2013 WL 690431, at *5.

---

[5] The Court observes that in his initial letter-form objection to the PF&R Plaintiff did indicate that he did not use certified mail to file his notice with PrimeCare because he is indigent and has no access to legal counsel.  (ECF 17 at 2.)

For these reasons, and those stated more fully in the PF&R, the Court further finds that PrimeCare is entitled to summary judgment on Plaintiff's negligence and medical malpractice claims, to the extent that Plaintiff's Complaint alleges such claims.

## IV.    CONCLUSION

For all of these reasons, the Court **ADOPTS** the PF&R [ECF 16] to the extent that it is consistent with this memorandum opinion and order, **GRANTS** PrimeCare's motion to dismiss and alternative motion for summary judgment [ECF 12], and **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint [ECF 2].  Therefore it is **ORDERED** that this civil be, and the same is hereby, **DISMISSED WITHOUT PREJUDICE** and retired from the docket of the Court.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 27, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE